Lowery *v.* Pittsburgh Coal Company et al.,
Appellants.

Argued April 11, 1967.   Before ERVIN, P. J.,
WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN,
and SPAULDING, JJ.

Benjamin Diamond, for Commonwealth, appellant.

Anthony J. Polito, Robert T. Messner, and Rose, Schmidt & Dixon, for appellant.

Stephen I. Richman, with him Greenlee, Richman, Derrico & Posa, for appellee.

OPINION BY WRIGHT, J., June 16, 1967:

This case arises under The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, 77 P.S. 1201 et seq. On May 7, 1964, Joel S. Lowery filed a claim petition alleging that he became totally disabled from silicosis on June 4, 1955. Answers were filed by the employer and the Commonwealth.[1] On May 25, 1964, before any hearing had taken place, Lowery died. His death was called to the Board's attention by letter, but the widow did not file a separate fatal claim petition. See Moore v. Dodge Steel Co., 206 Pa. Superior

---

[1] Each answer pleads, inter alia, that the claim was barred by the statute of limitations contained in Section 315 of the Act, 77 P.S. 1415. The Referee found this contention persuasive. However, the Board did not decide the case on that basis. Neither do we. See Ciabattoni v. Birdsboro Steel Foundry and Machine Co., 386 Pa. 179, 125 A. 2d 365, reversing 179 Pa. Superior Ct. 538, 118 A. 2d 229. It is interesting to note that, between the dates of the Superior and Supreme Court decisions in the Ciabattoni case, the legislature had extended the limitation period from one year to sixteen months. It is possible to justify the ultimate decision in the Ciabattoni case on the ground that the claim petition had been filed within the limitation period as enlarged by the intervening amendment.

Ct. 242, 213 A. 2d 130. After taking testimony at a hearing on August 19, 1964, the Referee made an order, June 9, 1965, dismissing the claim petition. On April 21, 1966, the Workmen's Compensation Board affirmed the Referee's order of dismissal. On October 21, 1966, the Court of Common Pleas of Washington County reversed the Board's decision, substituted its own findings of fact, concluded that compensation should be paid, and remanded the case to the Board for the purpose of fixing the amount due. Both the employer and the Commonwealth have appealed.

It has been consistently held that, where the decision of the Board is against the party having the burden of proof, the Court of Common Pleas has no power to reverse findings of fact by the Board unless there has been a capricious disregard of competent evidence. We recently restated the applicable legal principles in *Brasacchio v. Pa. Highway Dept.*, 208 Pa. Superior Ct. 212, 222 A. 2d 418, as follows (citations omitted) : "In an occupational disease compensation case it is claimant's burden to prove all the elements necessary to support an award. . . The credibility and weight of the testimony are matters for the Board to determine. . . The Board is not required to accept the testimony of any witness, and this rule applies even though the testimony is not contradicted. . . It is for the Board as the final fact-finding body to determine from all the evidence whether claimant has sustained the burden resting upon him, and its finding that he has not is a pure finding of fact. . . The appellate court must view the evidence in the light most favorable to the party having the Board's decision. . . Where the compensation authorities refuse to find facts in favor of the party having the burden of proof, the question on review is not whether the evidence would sustain such a finding, but whether there was a capricious disregard of competent evidence in the refusal so to find".

The basis of the Board's decision in the case at bar was its refusal to find that claimant became totally disabled from silicosis within four years from the date of his last employment as required by Section 301(c) of the Act, 77 P.S. 1401(c). There is no question that the date of claimant's last employment was June 4, 1955. His attending physician, Dr. Sydney Safran, testified that claimant sustained a coronary heart attack at that time, and was treated for coronary insufficiency, myocardial infarction, and angina pectoris. On May 9, 1961, claimant was admitted to the Canonsburg General Hospital, where his condition was diagnosed as myocardial infarction and angina pectoris. On July 18, 1963, claimant was admitted to Flick State Hospital, and was thereafter treated by Dr. Richard P. Jahnig. It was Dr. Jahnig's opinion that claimant had silicosis. He testified that the silicosis was a condition of long standing "possibly 8 to 10 years prior. . . It dates back to 1955 in our medical history". However, he conceded that he had not known of claimant's admission to the Canonsburg General Hospital. Dr. Safran stated: "There is a very good possibility that a good many of his symptoms could have been caused by this lung condition that caused his death. . . I would have to state that his disability was caused by emphysema and silicosis which we did not know existed". Dr. Safran had previously testified as follows: "During the course of my taking care of him, I believe he was seen by several heart specialists and also seen at the clinic, the miner's clinic. It was through the clinic that he was ultimately referred to a heart specialist in Washington, Pennsylvania, who saw him quite frequently during his later years".

The pivotal issue in the instant case is the date of claimant's disability from silicosis. Having before it the evidence relating to claimant's heart condition, the Board referred to Dr. Jahnig's estimate as follows:

"Although competent, we do not accept this evidence as credible". With regard to Dr. Safran the Board stated: "The tenor of his testimony presents equivocation as to claimant's condition and the basis for same. This does not meet the standard of unequivocal medical testimony required in these cases". The credibility and weight of the testimony were matters for the Board to determine. Our review of the record leads us to agree with the Board that the opinions of Dr. Jahnig and Dr. Safran were not only indefinite and equivocal, but also were based on speculation and conjecture. We find no capricious disregard of competent evidence. It is our view that the Board was fully warranted in finding that claimant had not sustained the required burden of proof.

The decision of the Board in the case at bar is supported by our recent decisions in *Obzut v. Phila. & Reading C. & I. Co.,* 199 Pa. Superior Ct. 289, 184 A. 2d 381, and *Peron v. Phoenix Park Coal Co.,* 202 Pa. Superior Ct. 495, 198 A. 2d 370. In the *Obzut* case the Board refused to make an award, and the Court of Common Pleas dismissed claimant's appeal. In affirming, we rejected a contention that the Board was guilty of a capricious disregard of medical testimony as to the date of claimant's disability. In the *Peron* case, rejecting a similar contention, we expressly stated that it was within the province of the Board to decline to make an award if it found the medical testimony unsatisfactory. The *Obzut* and *Peron* cases control the instant appeals, and require reversal of the order below.

The order of the court below is reversed, and the decision of the Board is reinstated.

———

Dissenting Opinion by Hoffman, J.:
I respectfully dissent.

It is undisputed that the claimant worked in the coal mines of defendant, where a silica hazard is known to exist, from April, 1929 until June, 1955. At that time, he ceased working because of disability and never worked again. He was concededly suffering from silicosis in 1963, and that condition caused his death in 1964.

The sole question before the Board was whether the claimant became totally disabled from silicosis within four years from the date of his last employment with the defendant, on June 4, 1955.

Dr. Richard P. Jahnig, a specialist in tubercular and related diseases, testified that, on the basis of physical examinations he conducted in 1963, the claimant had become disabled some eight years earlier from silicosis. Dr. Jahnig stated:

"A. . . . I feel definitely, from the cases we have seen up there and previous similar cases, that his [condition] had to exist for some years prior to his admission.

. . .

"Q. In the particular case of Mr. Lowery, how long had this silicosis endured?

. . .

"A. At least . . . it was possibly eight to ten years prior.

"Q. Can you give an estimate of the period of time that the condition became so extreme that it became disabling?

"A. Some length of time, eight years ago. . . . It dates back to 1955 in our medical history.

"Q. Is it your opinion then Doctor that Mr. Lowery, your diagnostic opinion, that Mr. Lowery had had a condition of silicosis and silicotuberculosis since around 1955, 1956?

"A. It would be my opinion, yes."

The doctor's testimony remained unshaken on cross-examination.

Doctor Sydney Safron, the claimant's attending physician, fully corroborated this testimony. Dr. Safron did testify, as the majority notes, that the claimant initially sustained a heart attack in 1955, and was treated for coronary insufficiency, myocardial infarction, and angina pectoris. However, Dr. Safron went on to state that he had never looked for silicosis in 1955, because he had no facilities with which to make such a diagnosis at that time. He candidly told the Referee that, in light of what he had since learned, the claimant's "disability was caused by emphyzema and silicosis which we did not know existed."

The defendant introduced no evidence whatever. Nonetheless, the Workmen's Compensation Board dismissed the petition, finding that claimant "did not become totally disabled . . . within the time and requirements of §301(c) of said Act." To reach this conclusion, the Board wholly rejected the uncontradicted, fully corroborated testimony of the claimant's medical witness, Dr. Jahnig, and substituted its own judgment for that of the medical expert.

This is not a case in which the doctor's testimony was rejected because it was "weak and uncertain" or because it was "indefinite and inconsistent." Cf. *Brasacchio v. Pennsylvania Highway Department*, 208 Pa. Superior Ct. 212, 222 A. 2d 418 (1966). The sole reason offered by the Board for disregarding the competent, uncontradicted, and corroborated medical testimony of Dr. Jahnig was that it was "not credible."[1]

It is true that the Board is not required to accept the uncontradicted testimony of any witness, at least where it is not corroborated. *Peron v. Phoenix Park*

---

[1] Although our Court now characterizes Dr. Jahnig's testimony as "indefinite and equivocal" and "based on speculation and conjecture," the record shows that the Board made no such finding.

*Coal Co.*, 202 Pa. Superior Ct. 495, 198 A. 2d 370 (1964). In this case, however, the Board has exceeded even that authority, and wholly disregarded uncontradicted testimony which was substantiated by another, disinterested witness.

In my view, this case demonstrates that the Board's discretion as the "ultimate fact-finder" must be qualified by its obligation to deal rationally and coherently with the evidence before it. To reject the testimony of Dr. Jahnig, on this record, by characterizing it as *"competent but not credible"* seems to me so arbitrary as to require corrective action by this Court. The Board's terse and cryptic language, if approved by us, renders impossible any meaningful review of its action on appeal.

While I acknowledge the Board's power to reject the testimony in question, I believe it has the duty to explain precisely why, on this record, the medical specialist's testimony was "not credible." The record should show with some particularity the Board's reasons for rejecting the only evidence presented in a difficult and complex area, where the Board's own expertise is not especially relevant, and when, after all, it did not itself observe the demeanor of the witnesses. In the language of Mr. Justice FRANKFURTER, "[T]he orderly functioning of the process of review requires that the grounds upon which the . . . agency acted be clearly disclosed and adequately sustained." *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943); cf. 2 Davis, Administrative Law (1958) §16.12, and 2 Larson, Workmen's Compensation Law (1961) §79.54.

I am especially concerned to see an explanation of the Board's action in this case, because there is a substantial danger that it has applied a rule never specifically approved by this Court. That rule would exclude from consideration the testimony of an expert medical witness as to the date of the commencement of claim-

ant's disability, where the date is prior to the doctor's first examination of the claimant. If the Board is indeed relying on such a rule, it should say so, and subject the rule to judicial scrutiny.[2]

The real difficulty here is that we can discern nothing whatever from the Board's opinion. To acquiesce in its disposition of this case on the ground that "it is for the Board as the final fact-finding body to determine from all the evidence whether claimant has sustained the burden resting upon him," seems to me to be an abdication of our judicial responsibility.

I would remand the record to the Board for a more precise explanation of its reasons for rejecting the claimant's petition.

---

[2] Judge FLOOD, dissenting in *Obzut v. Philadelphia & Reading Coal & Iron Co.*, 199 Pa. Superior Ct. 289, 293, 184 A. 2d 381 (1962), did come to grips with this question, although the majority in that case did not. He flatly and persuasively rejected the contention that the Board could reject expert medical testimony on the ground stated above.