Lowery *v.* Pittsburgh Coal Company (et al., Appellant).

Argued April 15, 1970.   Before WRIGHT, P. J., WAT-
KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and
CERCONE, JJ.

*Richard C. Witt,* Special Assistant Attorney Gener-
al, with him *Clyde M. Hughes, Jr.,* Assistant Attorney
General, and *William C. Sennett,* Attorney General, for
Commonwealth, appellant.

*Stephen I. Richman,* and *Greenlee, Richman, Der-
rico & Posa,* for appellee.

OPINION BY WRIGHT, P. J., June 11, 1970:
This case is before us for the second time.   It arises
as the result of a claim petition under The Pennsylva-

nia Occupational Disease Act[1] filed by Joel S. Lowery on May 7, 1964, alleging that he became totally disabled from silicosis on June 4, 1955. By order dated June 9, 1965, the Referee dismissed the claim petition. On April 21, 1966, the Workmen's Compensation Board affirmed the Referee's order of dismissal. On October 21, 1966, the Court of Common Pleas of Washington County reversed the Board's decision, substituted its own findings of fact, concluded that compensation should be paid, and remanded the case to the Board for the purpose of fixing the amount due. On June 16, 1967, this court reversed the court below and reinstated the decision of the Board. See *Lowery v. Pittsburgh Coal Co.*, 210 Pa. Superior Ct. 75, 231 A. 2d 899. On November 28, 1967, the Supreme Court reversed this court and remanded the record to the Workmen's Compensation Board "for further proceedings not inconsistent with the views expressed herein". See *Lowery v. Pittsburgh Coal Co.*, 427 Pa. 576, 235 A. 2d 805. On October 24, 1968, the Board reaffirmed its determination of April 21, 1966. By order dated July 18, 1969, the court below again reversed the Board. The Commonwealth has appealed. In remanding the case to the Board the Supreme Court made the following statement (italics supplied):

"The majority of the Superior Court has undoubtedly correctly stated the law with respect to the review of decisions of the Board. Certainly it is the claimant's burden to prove all of the elements necessary to support an award. There is no doubt that the credibility and weight of the testimony are matters for the Board to determine. *Nor is the Board required to accept the testimony of any witness, even though the testimony is uncontradicted.* No citations of authority are required to support the proposition that the Board, as the final

---

[1] Act of June 21, 1939, P. L. 566, 77 P.S. 1201 et seq.

fact-finding body, must determine whether the claimant has sustained his burden, and that the question on review is not whether the evidence would sustain the Board's finding, but whether there was a capricious disregard of competent evidence . . .

"We are in agreement with the dissenting opinion in the Superior Court that the Board has furnished an insufficient basis for an adequate review of its decision . . . We conclude that the case must be remanded to the Board so that it may more precisely explain its reasons for rejecting the claim and so that effective judicial review of the Board's decision may be had".

Section 301(c) of the Act, 77 P.S. 1401(c), provides that, to be compensable, Lowery's disability must have occurred within four years after the date of his last employment. It is undisputed that the date of Lowery's last employment was June 4, 1955. The basis of the Board's decision in the case at bar, both originally and on remand, was its refusal to find that Lowery became totally disabled from silicosis within four years after June 4, 1955. The evidence on that question, consisting of the testimony of Dr. Richard P. Jahnig and Dr. Sidney Safron, is summarized in the opinion of the Supreme Court as follows:

"The physician [Jahnig] who made the diagnosis of silicosis in 1963 testified that the condition was one of long standing, and that in his opinion, the condition had existed in 1955 and 1956. The physician [Safran] who had treated the decedent subsequent to his 1955 heart attack testified that he did not diagnose silicosis at that time. He explained that at that time he had no facilities to make such a diagnosis. He further testified that in the light of what he had learned subsequent to that time, it was now his opinion that the decedent's disability for at least the period from one year after his 1955 heart attack until his death was caused by silicosis".

In its first decision the Board found this medical testimony to be competent but not credible. As we understand the Supreme Court opinion, the case was remanded because the Board offered no explanation for such a finding, and because the Board might have applied a rule "which would exclude from consideration the testimony of an expert medical witness as to the date of the commencement of the disability where that date is prior to the doctor's first examination of the claimant". The difficulty experienced by the Supreme Court in reviewing the Board's first decision was adequately analyzed and answered in the second decision of the Board as follows:

"It is the Board's understanding of the law that competency differs from credibility. The former is a question which arises before considering the evidence given by the witness; the latter concerns the degree of credit to be given to his story. The former denotes the personal qualification of the witness; the latter his veracity. A witness may be competent, and yet give incredible testimony; he may be incompetent, and yet his evidence, if received, be perfectly credible. Competency is for the court; credibility for the jury. Often the term credible is used as the equivalent of competent, but the Board has adhered to the distinction . . .

"Be that as it may, we did not accept the evidence of Dr. Jahnig as credible because it was speculative, conjectural and not predicated on medical fact. To reject this evidence for these reasons is not intended to establish a rule that a claimant is barred unless his medical witness saw him on or before the onset of total disability or before the end of the four-year period provided in Section 301(c) of the Act, 77 P.S. 1401(c). If his opinion is based on tested medical facts which are the evidence of earlier total disability, we have accepted this evidence as credible. In this case, Dr. Jahnig first saw the claimant in 1963 and found him

to be totally disabled as a result of his examination. The doctor admits he did not examine any medical records existing prior to claimant's hospital admission in 1963. Assuming that he had examined the records of previous hospital admissions while claimant was under the care of Dr. Sidney Safron, they would provide little recorded evidence of the claimant's pulmonary condition. In July, 1955, the diagnosis was 'coronary occlusion,' a totally unrelated condition to silicosis or anthracosilicosis. On August 11, 1960, the diagnosis was 'coronary occlusion.' An x-ray report dated August 15, 1960 states that 'The changes in both lung fields do not appear typical of a pneumoconiosis . . .' Although the report mentions a reference to note the claimant's occupation, the condition remained a coronary occlusion.

"A subsequent admission in May, 1961 carries a diagnosis of 'myocardial infarction,' equally unrelated to the covered disease. In fact, the hospital record in Dr. Safron's own hand notes 'chest—lungs clear'.

"In this posture, the only medical suggestion of a pulmonary disease is found in the x-ray of August, 1960, well beyond the four-year limitation provided by Section 301(c), supra.

"With respect to Dr. Safron's testimony, we thoroughly reviewed pertinent portions and related same in our opinion of April 21, 1966. His references to the claimant's condition are without basis in medical fact, and are not unequivocal as to the claimant's condition and cause of disability. It is not enough that the claimant's lungs may have been subjected to the exposure of dust of silicon dioxide, or that he possibly suffered some degree of disability attributable to his exposure. The issue is whether the insidious disease progressed to the point of total disability at the time alleged. Only the latter is compensable under the law.

"Believing that this action by the Board meets the direction of the Supreme Court, we would, for the rea-

sons stated herein, after reconsideration of the case, affirm our determination of April 21, 1966".

In reversing the second decision of the Board, the court below stated that "the Board presumed too much when it refused to accept the uncontradicted testimony of the doctors without at least seeking medical advice from an impartial physician . . . We think the rule in compensation cases should be that a corroborated, uncontradicted, medical opinion cannot be completely disregarded unless the matter under investigation is so simple as to be within the comprehension of ordinary lay persons".

It is apparent that the action of the lower court was not based upon the present state of the law, but upon what the lower court feels the law should be. Neither the lower court nor this court is authorized to change established legal principles. The Supreme Court has clearly set forth, in the italicized language appearing in the second paragraph of our present opinion, that the Board is not required to accept the testimony of any witness even though the testimony is uncontradicted. We agree with the Board that it has complied with the direction of the Supreme Court. It is our view that the second decision of the Board should not have been disturbed.

The order of the court below is reversed, and the decision of the Board is reinstated.