Segzda *v.* Jones & Laughlin Steel Corporation and Department of Labor and Industry.

Argued October 22, 1971, before Judges KRAMER, MANDERINO and MENCER, sitting as a panel of three.

*Richard C. Witt*, Special Assistant Attorney General, with him *S. C. Vary*, Assistant Attorney General, and *J. Shane Creamer*, Attorney General, for appellant.

*Kenneth J. Yablonski*, for appellee.

OPINION BY JUDGE KRAMER, February 24, 1972:
This is an appeal from an order of the Court of Com-

mon Pleas of Washington County, dated August 17, 1970, reversing a decision of the Workmen's Compensation Board (Board). The Board had affirmed the findings of fact, conclusions of law, and order of the referee disallowing a claim for compensation under the Pennsylvania Occupational Disease Act, Act of June 21, 1939, P. L. 566, 77 P.S. 1201 et seq.

Anthony J. Segzda (Claimant) filed a claim petition under said Act on November 26, 1963, alleging that as a result of his employment with the Jones & Laughlin Steel Corporation in a hazardous occupation having a silica or anthraco-silica hazard, he suffered total occupational disability. At the time the Claimant filed his claim, he was 71 years old and had worked in the coal mines of Pennsylvania for about 45 years. Claimant worked in the Jones & Laughlin mines from 1944 through January 28, 1955, on which date he was dismissed for lack of work at the mines. The record clearly shows that the Claimant had been exposed to coal and rock dust during his last ten years in the employ of Jones & Laughlin. Subsequent to his dismissal on January 28, 1955, Claimant remained unemployed until his death on May 12, 1966, after which date his widow pursued the compensation claim.

The record indicates that, prior to his dismissal, the Claimant had experienced difficulty with his breathing in that he had a shortness of breath. He was treated by his family doctor on occasion for colds. On October 21, 1963, the Claimant was examined by a Dr. Goldman. The examination included a personal history, a physical examination, x-rays and pulmonary function studies. Dr. Goldman was of the opinion that Claimant was totally and permanently industrially incapacitated due to silicosis and emphysema. Neither Jones & Laughlin nor the Commonwealth denies that as of October 21, 1963, the diagnosis of Dr. Goldman is correct.

The problem arises in that Dr. Goldman, in arriving at his medical conclusions following the 1963 examination, had used a series of x-ray plates taken at the Centerville Clinic in the years 1958, 1960 and 1961. Dr. Goldman concluded that no later than January 1, 1959, and quite possibly earlier, Claimant was totally and permanently disabled as a result of silicosis. Dr. Goldman was the sole expert witness in this case inasmuch as the defendants presented no evidence whatsoever. Claimant was the only other witness.

At the conclusion of the Claimant's case, the attorney for the Commonwealth moved for a dismissal on the grounds that the Claimant had failed to prove his case. The referee before whom the testimony had been taken made findings of fact, *inter alia,* No. 7, which reads: "That after considering all the evidence in this case your Referee finds that the claimant has failed to prove by credible medical evidence that he was totally and permanently disabled from anthraco-silicosis occurring within four years of his last employment to an anthraco-silica hazard." The referee therefore concluded that the Claimant had failed to prove a compensable disability under the Act. The matter was appealed to the Workmen's Compensation Board, and the Board, in an opinion, affirmed the findings and conclusions of the referee. The Board stated: ". . . Dr. Goldman's opinion regarding disability as of January 1, 1959, despite his examination of x-rays taken within four years of Claimant's last employment, appears to us to be speculative and conjectural and not based upon a sound foundation." Nevertheless, the Board vacated the referee's findings and conclusions and remanded the matter back to the referee ". . . to afford the Claimant the opportunity of presenting any evidence which may be pertinent to his condition within the four-year period following his last employment in

the coal mining industry." After a number of continuances, both the Claimant and the doctor the Claimant intended to call for testimony died, and when the matter was finally called for a hearing, neither the Claimant's counsel nor counsel for Jones & Laughlin or the Commonwealth offered any additional evidence, and the matter was resubmitted on the prior record. The second referee made the same findings and conclusions which upon appeal to the Board were once again affirmed. Thereafter an appeal was taken to the Common Pleas Court of Washington County. In its opinion the lower court stated: "As we see it, the only issue before us is whether or not there was a capricious disregard of competent evidence by the Workmen's Compensation Board." The lower court then proceeded to review the only evidence in the case, which was the testimony of Dr. Goldman, and concluded that: "In our opinion therefore Dr. Goldman's testimony was competent and credible and the Board capriciously disregarded it."

At the argument before this Court, it was stipulated by counsel for the Claimant and the Commonwealth, that the employer, Jones & Laughlin, was not properly a party to the appeal and therefore was permitted by this Court to withdraw.

In view of the facts (1) that there was no denial by the Commonwealth that the Claimant, when he was examined in 1963, was totally and permanently disabled due to the disease of silicosis *then* present, and further (2) that the Claimant had sufficient aggregate employment with Jones & Laughlin to qualify for a compensation award, the only question which was presented to the Board was whether or not the Claimant had established his total disability within four years from the date of his last employment by Jones & Laughlin in a hazardous occupation. Section 1 of the Act,

77 P.S. 1401, in Subparagraph (c) reads in part: "Wherever compensable disability or death is mentioned as a cause for compensation under this Act, it shall mean only compensable disability or death resulting from occupational diseases and occurring within four years after the date of his last employment in such occupation or industry."

Since the last date of employment was January 28, 1955, the burden was upon the Claimant to prove that he had been totally and permanently disabled from anthraco-silicosis on or before January 28, 1959. It will be recalled that Dr. Goldman, based upon his examination of the Claimant on October 21, 1963, expressed the medical opinion that the Claimant had suffered complete disability as of January 1, 1959, or twenty-seven days prior to the expiration of the statutory four-year claim period. January 1, 1959, therefore becomes a very critical date in the disposition of this case. Our very careful review of Dr. Goldman's testimony indicates that in his direct examination Dr. Goldman did not specify January 1 as the date upon which he concluded that the Claimant had been totally and permanently disabled. Rather, his testimony reads: "It is my professional opinion that this patient is totally and permanently industrially incapacitated due to silicosis and emphysema which has been caused by the silicosis and has so been disabled since at least 1959." On cross-examination, when Dr. Goldman was interrogated on his use of the term "since at least 1959," he replied: "January 1, just to pick a date." He stated in further cross-examination that: "I felt it can go back even further than that [1959]." In explaining how he could diagnose the disability prior to the date of his singular examination, Dr. Goldman stated: "But you can have an opinion as to when someone might have been disabled if you have a series of x-rays to compare." Dr.

Goldman admitted that the conclusiveness of a diagnosis based upon x-rays was substantially affected by the individuals taking and interpreting the particular x-rays. Dr. Goldman had not taken the prior x-ray.

The case of *Lowery v. Pittsburgh Coal Company* was thrice entertained by the appellate courts of Pennsylvania ((1) 210 Pa. Superior Ct. 75, 231 A. 2d 899 (1967); (2) 427 Pa. 576, 235 A. 2d 805 (1967); and (3) 216 Pa. Superior Ct. 362, 268 A. 2d 212 (1970)). These Washington County cases involved a question of whether the onset of claimant's disability had occurred within four years of his last date of employment. In the last cited *Lowery* case, the Court said, 216 Pa. Superior Ct. at 368: "It is apparent that the action of the lower court was not based upon the present state of the law, but upon what the lower court feels the law should be." It would appear that the Common Pleas Court of Washington County has not heeded the subtle direction of the Pennsylvania Superior Court and still insists upon substituting its evaluation of the facts for those of the Board, thereby circumventing the legislative mandates.

In the case of *Brasacchio v. Pennsylvania Highway Department,* 208 Pa. Superior Ct. 212, 218, 222 A. 2d 418, 421 (1966), the Court stated: "In an occupational disease compensation case, it is the claimant's burden to prove all the elements necessary to support an award. . . . The credibility and weight of the testimony are matters for the Board to determine . . . . The Board is not required to accept the testimony of any witness, and this rule applies even though the testimony is not contradicted. . . . It is for the Board as the final fact-finding body to determine from all the evidence whether claimant has sustained the burden resting upon him, and its finding that he has not is a pure finding of fact. . . . The appellate court must view the evidence

in the light most favorable to the party having the Board's decision. . . . Where the compensation authorities refuse to find facts in favor of the party having the burden of proof, the question on review is not whether the evidence would sustain such a finding, but whether there was a capricious disregard of competent evidence in the refusal so to find. . . ."

In the case of *Obzut v. Philadelphia and Reading Coal and Iron Company,* 199 Pa. Superior Ct. 289, 292, 184 A. 2d 381, 382 (1962), the Court said: "It is the prerogative of the board, and not the court, to weigh the testimony of witnesses and to accept or reject it in whole or in part. . . . Even uncontradicted testimony need not be accepted as true. . . ."

In *Chilcote v. Leidy,* 207 Pa. Superior Ct. 345, 349-50, 217 A. 2d 764, 766 (1966), the Court stated: " 'Capricious disbelief is not merely disbelieving a witness. To constitute capricious disbelief there must be a wilful, deliberate disbelief of an apparently trustworthy witness, whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth. To charge a judge (or an administrative agency) with a capricious disbelief, it must be so flagrant as to be repugnant to a man of reasonable intelligence. . . . The credibility of the witnesses, the weight of their testimony and the reasonable inferences to be drawn from it are for the board. . . . We cannot, even if we would, substitute our judgment for the board's upon these factors of its decision.' "

The Board in this case did not exclude from its consideration the testimony of the expert medical witness; rather, the Board examined it and found it to be "speculative and conjectural and not based upon a sound foundation." We are fully aware that the Occupational Disease Act must be liberally construed in favor of the employee and that he is entitled to the

benefit of all favorable inferences which may be drawn from the evidence. *See DeMascola v. Lancaster*, 200 Pa. Superior Ct. 365, 189 A. 2d 333 (1963). A careful reading of the very brief record in this case convinces us that the Board was not guilty of a capricious disbelief of the medical witness. We conclude that the Board properly found that this Claimant had not met his burden of proof. The cross-examination of Dr. Goldman indicates opinion testimony to a total disability date prior to January 28; however, it was within the prerogative of the Board as the finder of fact to accept or reject this conclusion.

No matter how sympathetic this Court may be to the claim of a widow of a miner who died of a dreaded miner's disease, we are powerless to substitute our judgment for the findings and conclusions of the Board. We hold that the lower court erred in substituting its judgment for that of the Board, and therefore we must reverse the order of the court below and reinstate the order of the Board.