Rice *v.* A. Steiert & Sons, Inc., et al.

Argued February 5, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Lowell A. Reed, Jr.,* with him *Rawle & Henderson,* for appellants.

*Gerald J. Haas,* for appellee.

OPINION BY JUDGE KRAMER, March 23, 1973:

This is an appeal by A. Steiert & Sons, Inc. and Pennsylvania Manufacturers' Association Insurance Company (hereinafter we shall refer to both appellants as Steiert) from an order of the Common Pleas Court of Montgomery County sustaining the exceptions of Thomas J. Rice (Rice) to an order of the Workmen's Compensation Board (Board). The Board had affirmed the referee's decision thereby dismissing Rice's appeal from the referee's denial of a petition to set aside a final receipt.

Rice was injured September 1, 1965 while working for Steiert. Rice was in the act of picking up a box of steel wire when he twisted his right leg and injured his right thigh, back and hip. On September 30, 1965, an agreement for compensation was signed designating September 7, 1965 as the date of disability. Rice returned to work on November 2, 1965, at which time he signed a final receipt. He worked through November 14, 1965, at which time disability recurred, and a supplemental agreement was signed (December 7, 1965) for additional compensation, and setting aside the first final receipt. On February 25, 1966, Rice signed a second final receipt indicating that he was able to return to work on February 28, 1966.

On May 24, 1966, Rice filed a petition to set aside the second final receipt. A hearing was held on October 18, 1966 before Referee John Allessandroni. The referee issued an award in favor of Rice, and Steiert appealed to the Board. On June 8, 1967, the Board sustained Steiert's appeal, vacated the referee's findings of fact and conclusions of law, appointed an impartial physician, and remanded the case for further hearing. The Board clearly indicated that it found Steiert's argument more convincing, but wanted to give "this unfortunate Claimant every benefit under the Act. . . ."

Dr. Raymond O. Stein was appointed as an impartial physician, and a second hearing was held. The referee again found for Rice, and Steiert again appealed to the Board. The Board reviewed the record and Dr. Stein's testimony at length, and found it equivocal. The Board also noted that Dr. Stein did not view all of the hospital records and x-rays, as directed in the Board's first decision. The Board's second decision issued January 30, 1969, once again sustained Steiert's appeal, vacated the findings of fact and conclusions of the referee, and provided for the appointment of a second impartial physician.

Dr. Will Gash was appointed as the second impartial physician, and a third hearing was held on June 18, 1969. The referee found for Steiert, and refused to set aside the final receipt. This time, Rice appealed to the Board, which dismissed his appeal on April 30, 1969. Rice, then, appealed to the Common Pleas Court of Montgomery County. The lower court held that the Board's second finding of fact, that claimant had recovered from his hip injury at the time he executed the final receipt, was not supported by the record. The lower court also held that the Board had capriciously disregarded the evidence of Dr. Stein. Consequently the lower court sustained Rice's exceptions and remand-

ed the matter to the Board for "further hearing and determination (77 P.S. §879)."

Steiert appealed to this Court, and Rice filed a motion to quash on the basis that the lower court's order was interlocutory and hence unappealable. To support his motion to quash, Rice relies on *Puskarich v. Puskarich,* 174 Pa. Superior Ct. 581, 102 A. 2d 191 (1954). There the court said: "If the court decides that additional evidence is required or new findings of fact must be made, it must remit the record to the Board for further action, and an order thereon will be interlocutory and not appealable." 174 Pa. Superior Ct. at 582-583, 102 A. 2d at 192. Although we agree with the law espoused in *Puskarich,* having fully reviewed the record, we must agree with Steiert that it is not applicable in this case. In this case, the lower court did not require that additional evidence be heard or that additional findings of fact were needed before it could review the record. The lower court asserted that Dr. Stein's testimony was capriciously disregarded and instructed the Board to remedy this error. The propriety of this holding by the lower court will be discussed later. At this time, we conclude that the order of the lower court was appealable. *See Rizzo v. Baldwin-Lima-Hamilton Corp.,* 216 Pa. Superior Ct. 96, 259 A. 2d 178 (1969); *Bussone v. Sinclair Refining Company,* 210 Pa. Superior Ct. 442, 234 A. 2d 195 (1967).

In light of our conclusion that this was an appealable order, we must now consider the remaining substantive issues raised in this case. Initially we note that Section 434 of the Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, as amended, 77 P.S. §1001, provides the initial basis for Rice's petition to set aside the final receipt and it provides: "A final receipt, given by an employe or dependent entitled to compensation under a compensation agreement or

award, shall be prima facie evidence of the termination of the employer's liability to pay compensation under such agreement or award: Provided, however, That the board, or a referee designated by the board, may, at any time within two years from the date to which payments have been made, set aside a final receipt, upon petition filed with the board, if it be *conclusively proved* that all disability due to the accident in fact had not terminated." (Emphasis added.)

The cases have established that the claimant must meet his burden with clear and convincing evidence. *See Whitehead v. Casey Building Wreckers, Inc.,* 6 Pa. Commonwealth Ct. 256, 294 A. 2d 215 (1972). In essence, when the Board twice found that the medical testimony favoring claimant was equivocal, it concluded that Rice did not meet the burden of proof required.

When the decision of the Board is adverse to the party having the burden of proof, the test on appellate review is whether the Board's findings are consistent with each other and with its conclusions of law and can be sustained without a capricious disregard of competent evidence. *See Bullock v. Building Maintenance, Inc.,* 6 Pa. Commonwealth Ct. 539, 297 A. 2d 520 (1972); *Billet v. Keystone Roofing Manufacturing Company,* 6 Pa. Commonwealth Ct. 23, 291 A. 2d 921 (1972); *Pellegrino v. Baldwin-Lima-Hamilton Corp.,* 5 Pa. Commonwealth Ct. 150, 289 A. 2d 531 (1972). The lower court correctly points out that this test is different from ascertaining whether the findings of fact are supported by substantial evidence. This latter test is correct when the party bearing the burden of proof has received a favorable decision from the Board.

Nonetheless, the lower court goes on to hold that the Board's second finding of fact is not supported by the record. Even if we were to agree with the lower court, which we do not, the lack of substantial evidence

cannot be dispositive in this case. A finding of capricious disregard of competent evidence is not a corollary to be accepted whenever a lack of substantial evidence has been shown. As our Supreme Court said in *Barrett v. Otis Elevator Company*, 431 Pa. 446, 246 A. 2d 668 (1968) : "A finding that is completely unsupported by competent evidence does not capriciously disregard competent evidence if there is not competent evidence to support a contrary finding." 431 Pa. at 449, 246 A. 2d at 671.

In summary then, based on the foregoing, we conclude that the lower court erred when it chose to base its decision in part upon a lack of support for the Board's second finding. This determination is irrelevant in this case and therefore cannot be dispositive.

The medical testimony on Rice's unusual hip problems expose the very technical and difficult factual issue. All of the doctors agree that Rice has a disease known as idiopathic aseptic necrosis. This is a disease of an unknown causation whereby there is a softening or deadening of the end of the femur at the hip joint (in Rice's case), brought about by a loss of blood supply. Originally the doctors thought there was a fracture of the bone, but later all agreed that there was no fracture. All doctors agreed that this disease was present in Rice's hip prior to September 1, 1965. The real disagreement was whether Rice's explanation of what happened to him on September 1, 1965 could have "speeded up" his hip condition. Dr. Stein seemed to say that the kind of trauma Rice described could have caused his condition after September 1, 1965. Dr. Gash disagreed and said that Rice's hip condition was in existence prior to the incident and that it was not possible for anyone to say whether the incident was an inciting factor. In any event, Rice twice underwent surgery for the insertion of a steel prosthesis and cap

on to the end of his collapsed femur head at the hip joint.

When evidence was presented to the Board that Rice had signed the second final receipt, a prima facie case was made on the termination of Steiert's liability. The issue facing the Board then was whether Rice had proven conclusively that all disability *due to the accident* in fact had not terminated.

We turn now to the final issue before this Court; the lower court's conclusion that the Board capriciously disregarded Dr. Stein's testimony. In an effort to bolster its position, the lower court referred extensively to the Board's second opinion with reference to Dr. Stein's testimony. The court chastised the Board for omitting "significant parts of [Dr. Stein's] testimony" in order to substantiate its position. We have read and reread the testimony, and we cannot agree. The Board clearly explained that it considered the rehabilitating testimony in question. The Board stated: "Upon re-examination, the impartial physician [Stein] testified that his medical opinion was predicated on the twist of Claimant's body and not the fall. This effort to re-habilitate the impartial witness does not persuade us to arrive at a contrary conclusion. Secondly, all the available hospital records and x-rays of Claimant's disability were not examined by the impartial witness. Since such records, in our opinion, are vital to the just determination of this case, we consider this oversight to be equally fatal. Finally, the opinion of the impartial medical witness does not meet the required standard of proof."

Further, the lower court's holding that the Board capriciously disregarded portions of Dr. Stein's testimony presents somewhat of an enigma. If the Board had chosen to believe that Dr. Stein's testimony was sufficient to meet Rice's burden of proof, the Board

(under the lower court's reasoning) would have had to capriciously disregard Dr. Gash's testimony. Dr. Gash's position is juxtaposed to Dr. Stein's; and clearly the Board could not rely on both. Dr. Gash reviewed all the x-rays available; Dr. Stein did not. Dr. Stein's initial reference to a fall and concomitant use of the word "probably" in his testimony, permitted the Board to find his testimony equivocal. In light of these developments, and Dr. Gash's positive testimony, we find it impossible to concur with the lower court's holdings that the Board capriciously disregarded Dr. Stein's testimony. It is the function of the Board and not the court to determine facts and the credibility of witnesses. See *Segzda v. Jones & Laughlin Steel Corporation*, 4 Pa. Commonwealth Ct. 498, 287 A. 2d 708 (1972). The responsibility of the Board includes determining the weight and credibility to be given to medical experts. See *Drevitch v. Beverly Farms, Inc.*, 7 Pa. Commonwealth Ct. 1, 297 A. 2d 541 (1972). Capricious disregard cannot be found when the Board merely shows a preference to one impartial witness' testimony over another's. Capricious disregard has been defined as the wilful and deliberate disbelief of an apparently trustworthy witness whose testimony one of ordinary intelligence could not possibly challenge. See *Drevitch v. Beverly Farms, Inc., supra,* and *Bullock v. Building Maintenance, Inc., supra.* Clearly, the Board's conclusion that Dr. Stein's testimony was equivocal does not meet that test.

It is apparent from a reading of the lower court opinion that it overlooked the burden which the statute placed upon Rice. In two places, the lower court states that there is nothing in the record to indicate that Rice had recovered from "all the disabling injuries." That assertion however is not the point on which these cases turn. Rather the claimant (Rice)

had a duty to "conclusively" prove that "all disability due to the accident" in fact had not terminated. Our very careful reading of the transcripts of the three hearings permits us to conclude that the referee and Board were correct in their conclusions that Rice had failed to meet his statutory burden.

The record in this case is complete. It supports the findings and conclusions of the referee and the Board. There is nothing missing upon which the lower court could conclude that there was a need for further hearings, nothing further would be gained by further hearings, and therefore the lower court erred.

In light of the above, we must reverse the order of the lower court and affirm the order of the Workmen's Compensation Board.