## Esposito v. Commonwealth of Pennsylvania Occupational Disease Fund

*Thomas B. Noonan,* for claimant.

*Donald B. Cahoon, Jr.,* for Occupational Disease Fund.

KOSIK, J., April 9, 1974.—This matter is before the court on the claimant's appeal from a decision of the Pennsylvania Workmen's Compensation Appeal Board.

Claimant filed for benefits under section 301(i) of The Pennsylvania Occupational Disease Act of June 21, 1939, P. L. 566, as amended, 77 PS §1401, as a result of alleged total disability from anthracosilicosis contracted while employed in the anthracite industry. The referee, after hearing, awarded benefits in the amount of $100 per month. Since claimant expired

after his hearing, but before the award, all benefits were awarded to his widow up until the date of his death.

. Claimant's medical witness was a physician licensed to practice in the Commonwealth of Pennsylvania. He examined the claimant in his lifetime. The examination "consisted of a complete examination, chest x-ray, pulmonary function test, and exercise tolerance test." The pulmonary function study disclosed that the claimant's vital capacity was 34 percent of the predicted normal, and his maximum breathing capacity was 24 percent of the predicted normal. The X-ray report disclosed that the chest reveals the heart to be normal and the lungs were aerated.. There was no finding of an active inflammatory or neoplastic process. The doctor found clinical evidence of emphysema. He concluded that claimant was totally disabled from anthracosilicosis with pulmonary emphysema. He predicated this diagnosis on the claimant's exposure in the mining industry, physical examination, "and specifically the pulmonary function test." In addition, the doctor testified that although the X-ray reported the chest as being normal, it was his feeling that there was intertitial fibrosis present which formed the basis for silicosis in the lungs.

The Commonwealth offered, without objection, the report of its examining physician. Significantly, this report was limited to a chest X-ray and lung function studies. There was no evidence of a clinical examination, nor did the report arrive at any conclusion on the question of disability.

The Commonwealth appealed the referee's award of benefits. The board, noting the limitations placed on its power to review by *Universal Cyclops Steel Corporation v. Krawczynski*, 9 Comm. Ct. 176 (1973),

reversed the referee, and found that claimant's medical evidence was not competent to sustain claimant's burden of proof.

In Universal Cyclops Steel Corporation, supra, the court noted recent amendments to the Workmen's Compensation Act, particularly Act No. 61 of March 20, 1972, P. L. 105, changing section 23, 77 PS §854, to read that in any appeal the board may disregard the findings of fact of the referee if not supported by *competent* evidence. The word "competent" was substituted for "credible." The change resulted when the law gave the referees greater authority and abrogated their status as mere agents of the board which had the ultimate fact finding authority: Act No. 12 of February 8, 1972, P. L. 15, 77 PS §701. The board misapplied the holding of the Commonwealth Court. Too often, the board, the legislature and the courts fail to remember that Pennsylvania has a Workmen's Compensation Law, and an Occupational Disease Act. The former was originally enacted in 1915, and the latter in 1939. In many respects the two laws had comparable provisions. Often the legislature would amend one without thought to the comparable provision in the other. Such is the case before us. Universal Cyclops Steel Corporation, supra, correctly reflects the board's new status under the Workmen's Compensation Act. However, this is a case arising under the Occupational Disease Act, section 301(i), 77 PS §1401(i). While the legislature changed the board's relationship to the referees and limited the board's power of review in amending section 423 of the Workmen's Compensation Act, 77 PS §854, it made no such change in a comparable provision of the Occupational Disease Act of June 21, 1939, P. L. 566 (No. 284), sec. 423, 77 PS §1523, which remains unchanged since its enactment in 1939, and

as amended in 1952, P. L. 1811, sec. 5. Accordingly, under the Occupational Disease Act, the board's authority as ultimate fact finder remains undiminished.

It should be noted that notwithstanding the continuing existence of the Occupational Disease Act, and the particular provision under which this claim is filed, 77 PS §1401(i), the legislature virtually lifted basic provisions of the Occupational Disease Act, 77 PS §1208(k), and 77 PS §1401(d), and re-enacted same as part of the Workmen's Compensation Act, (No. 337). December 6, 1972, P. L. 1085, 77 PS §412, effective immediately. As the law presently stands, certain occupational disease claims for which disability occurs on or after July 1, 1973, shall be processed under the Workmen's Compensation Act. Any claims for which disability occurs prior to July 1, 1973, would seem to continue under the Occupational Disease Act.

In this posture, we find the board's decision in error because it is predicated on inapplicable authority. Under the present state of the law, the board's review power is not limited to determinations such as "competency" or "credibility" under the Occupational Disease Act. In such cases the board remains vested with the broader powers of section 423, 77 PS §1523, which remains unchanged. Accordingly, the board's legal conclusion that the claimant's medical evidence was not competent may be a correct one, providing, it is not capricious. In the present case the board has not given its reasons for concluding that the claimant's evidence is not competent. We might find some edification on this score in an interesting exercise in semantics starting with Lowery v. Pittsburgh Coal Co., 210 Pa. Superior Ct. 75 (1967), wherein the Superior Court affirmed the Workmen's Compensation Board in denying an occupational disease claim.

The board rejected the medical opinion of a physician by stating. " 'Although competent, we do not accept this evidence as credible.' " The Supreme Court in Lowery v. Pittsburgh Coal Co., 427 Pa. 576 (1967), accepted the principle that the board had wide latitude in dealing with evidence to establish facts, but held the characterization "competent, but not credible" to be so arbitrary as to require corrective action. They further held that " '[t]he Board's terse and cryptic language, if approved by us, renders impossible any meaningful review of its action on appeal.' " The case was remanded to the board so that it could more precisely explain its reasons for rejecting the claim. Subsequent board action was again appealed to the Superior Court in Lowery v. Pittsburgh Coal Co., 216 Pa. Superior Ct. 362 (1970). The case came to rest on an affirmance of the board. The court adopted the board's distinction between "competent" and "credible," as well as its reasons for rejecting the medical evidence.

For reasons hereinabove stated, we conclude that the case must be remanded to the board so that it may more precisely explain its reasons for rejecting claimant's medical evidence as "not competent," and so that effective judicial review of the board's decision may be had.

## ORDER

Now, April 9, 1974, the board's decision is vacated, and the record remanded to the Workmen's Compensation Appeal Board for further processing not inconsistent with the views expressed herein.