Joseph Switken Company and Liberty Mutual Insurance Company, Appellants, *v.* Mompie Jackson, Appellee.

Mompie Jackson, Appellant, *v.* Joseph Switken Company and Liberty Mutual Insurance Company, Appellees.

Joseph Switken Company and Liberty Mutual Insurance Company, Appellants, *v.* Mompie Jackson, Appellee.

Argued October 11, 1974, before Judges CRUMLISH, JR., KRAMER and WILKINSON, JR., sitting as a panel of three. Reargued March 3, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

556

 

*Barbara Pennell,* with her *Roger B. Wood, Joseph R. Thompson* and *James K. Thomas, II,* for employer and insurance carrier.

*David C. Harrison,* for Mompie Jackson.

OPINION BY JUDGE KRAMER, March 6, 1975:

This opinion involves the disposition of three appeals taken from two orders of the Court of Common Pleas of Philadelphia County which affirmed an order of the Workmen's Compensation Board (Board) disallowing a workmen's compensation claim of Mompie Jackson (Jackson).

Jackson was a truck driver physically handling the delivery of wholesale meat (packaged in barrels, boxes and packages) for Joseph Switken Company (Switken) in the Philadelphia area. He had been employed by Switken for approximately 18 years (the record also indicates that perhaps Jackson had been employed for only 16 years). For many years Jackson had suffered from diabetes. Because of this ailment, on the morning of June 15, 1965, the date of the incident in question, Jackson examined, washed and oiled his feet prior to putting on clean white cotton socks in preparation for work. This procedure had been recommended by a physician for Jackson. He testified that at some time during that day, while on the business of his employer, he experienced pain in his left leg and general dizziness, but he completed his work for the day. Upon arriving at his home, he immediately went to bed and called upon his

wife for assistance. She removed his shoes and socks and observed blood on the left sock at the large toe and a piece of glass imbedded under the front bottom portion of the toe. She removed a piece of glass approximately three-quarters of an inch long.

The record is quite clear that Jackson changed from his street shoes to his steel-toed and rubber-soled work shoes upon arriving at his place of employment. He reversed the procedure at the end of the work day, and the work shoes were placed in a locker at his place of employment. Because of a lack of feeling and general numbness about his feet, caused by the diabetes, Jackson was unable to state exactly when the glass became imbedded in his toe. He stated that on one delivery of meat for his employer he observed broken glass about the place of delivery. He concluded that it was at this place of delivery that the glass pierced the shoe and his toe. Jackson immediately notified his employer of his difficulty, and later obtained medical attention, but gangrene set in, and the toe was amputated.

Jackson filed a claim for compensation and Switkin denied knowledge of a work-related accident or injury. Hearings were held, after which a referee of the Board, on June 30, 1969, issued an adjudication disallowing Jackson's claim. This disallowance was based primarily upon a conclusion that Jackson had not sustained an accident in the course of his employment. The referee also found that Jackson was totally disabled from June 15, 1965. Upon appeal to the Board, and without the receipt of additional testimony or evidence, the Board issued an adjudication in which Jackson's appeal was dismissed, but the Board changed the referee's findings of fact. The Board found that:

"On June 15, 1965, the claimant, Mompie Jackson, suffered an accident while in the course of his employment when a piece of glass became imbedded in his left great toe."

The Board also concluded that Jackson had failed to prove that his physical disability and loss of employment were causally related to the accident.

The case was then appealed by Jackson, Switken, and Switken's insurance carrier (the Liberty Mutual Insurance Company). The lower court, without receiving any additional testimony or evidence, affirmed the adjudication of the Board and dismissed the appeal. The court concluded that, although the Board should be affirmed in its finding that Jackson had suffered an accident while in the course of his employment, the Board was correct in its conclusion that the medical testimony presented by Jackson fell short of the standard required to prove causal connection. Although the court was procedurally correct in reviewing the record to determine whether the Board had capriciously disregarded the evidence, we must hold that the court below was in error in its conclusion, based upon our very careful review of the entire record.

It should first be noted that the adjudication of the Board was rendered prior to the recent amendments to the Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq. (more specifically amended by Act No. 12 of 1972, enacted February 8, 1972, effective May 1, 1972) and as interpreted by this Court in the case of *Universal Cyclops Steel Corporation v. Krawczynski*, 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973). As we stated in other cases, prior to 1972, in workmen's compensation cases, the referee was the agent of the Board and the Board, therefore, had the power and authority to make changes in the findings of fact of the referee. *See Barnold Shoes, Inc. v. Workmen's Compensation Appeal Board,* 10 Pa. Commonwealth Ct. 73, 77, 308 A. 2d 189, 192 (1973) ; *State Workmen's Insurance Fund v. Young,* 2 Pa. Commonwealth Ct. 423, 426, 276 A. 2d 552, 554 (1971).

There can be no question that, prior to the recent amendments to the Act, the claimant in such cases has the burden of proving that he suffered injuries as a result of an accident occurring during the course of employment, and that there was a causal relationship between the accident and the injuries sustained. *Nichols v. Wright's Truck Stop,* 12 Pa. Commonwealth Ct. 8, 11, 314 A. 2d 563, 564 (1974); *Bullock v. Building Maintenance, Inc.,* 6 Pa. Commonwealth Ct. 539, 543, 297 A. 2d 520, 522 (1972). We have also held that where the court receives no additional evidence and where the result of the adjudication is *against* the person with the burden of proof, our scope of review is limited to determining whether the Board has capriciously disregarded the evidence or committed an error of law. *Rice v. A. Steiert & Sons, Inc.* 8 Pa. Commonwealth Ct. 264, 269, 301 A. 2d 919, 922 (1973); *Sherred v. Pittsburgh,* 7 Pa. Commonwealth Ct. 401, 405, 299 A. 2d 381, 383 (1973). Where the result of the adjudication runs *in favor of* the party with the burden of proof, we need only determine whether an error of law has been committed, and whether there is substantial evidence to support the adjudication. *Reed v. Glidden Company,* 13 Pa. Commonwealth Ct. 343, 345, 318 A. 2d 376, 377 (1974); *Williams v. San Giorgio Macaroni, Inc.,* 13 Pa. Commonwealth Ct. 386, 388, 319 A. 2d 434, 435 (1974).

In this case, both of these last two principles are operative because the Board found and concluded that Jackson (the party with the burden of proof) had suffered an accident while in the course of his employment, but it also concluded that he had failed to prove any causal connection between this accident and his injury.

While it may be tempting to discuss the weaknesses and strengths of Jackson's attempt to meet his burden, that is not our task. This record clearly establishes that on June 15, 1965 a piece of glass became imbedded in Jackson's left great toe, during his employment on that

day. While we recognize that how the glass became imbedded in the toe will remain a mystery, certainly there is sufficient circumstantial evidence in the record to support the Board's conclusion. *See Cody v. S.K.F. Industries, Inc.* 447 Pa. 558, 570, 291 A. 2d 772, 778 (1972). On this point, we must affirm both the Board and the court below.

On the question of causal connection, however, we cannot affirm. The Board stated:

"The claimant did not prove that his present condition, including the amputation, is related causally in *any way* to the accidental lodging of the piece of glass in his left toe." (Emphasis added.)

The lower court seemed to base its determination more upon its own impression of the credibility of the medical testimony (in light of the contradictory expressions of opinion), than upon the negation of a capricious disregard of the evidence by the Board, although the court speaks to both points. The record indicates that Jackson presented the only medical testimony, and his employer did not see fit to present any contrary evidence. Anyone who has read workmen's compensation transcripts of testimony knows that physicians, quite understandably, often will not give unqualified opinions on the causal connection between an injury and an accident, especially in those cases where the medical witnesses have not treated the patient throughout the entire medical history involved. In this case, we have a patient who had a long and very serious history of diabetes. The record clearly shows that the piece of glass (which was presented at the hearing) caused a puncture of Jackson's left great toe. This resulted in cellulitis, gangrene, and eventual amputation. In the light of the conclusions of the Board and the court below, we have read the testimony of the medical experts several times, and it must be our conclusion that the Board capriciously disregarded the testimony of these witnesses.

Upon reading this record one finds several instances where the medical witnesses seem to talk in circles. For example, the referee asked one of the medical experts the following questions and received the following replies:

"Q. Is that the only affect [sic] he had from the presence of the glass in the toe, is everything other than the loss of the toe related to the piece of glass or are they two separate items?

A. They are separate in this sense. I think the disease was present; however, he was able to work, nobody told him not to work, therefore his foot was not in a condition that kept him from working, then the glass ran into the toe, happenstance, led to gangrene and an infection involved the tissues above and all around it, it involved more than the toe, it always involves the tissues above, so it appears today the foot is actually swollen.

Q. Is this directly related to the glass in the foot?

A. It is related to the condition of the circulation that goes to the foot.

Q. We are back where we started?

A. Yes."

However, there is another question and answer in the record of the same medical witness' testimony, where we find the following question and answer:

"Q. How much of what he has right now, eliminate the back again, is related to his peripheral vascular disease, his present status, is the result of the piece of glass in his foot, in your opinion, if you have an opinion?

A. In my opinion a certain amount of his present condition of the foot is directly related to the glass, infection and the gangrene which occurred."

Once the Board properly concluded that Jackson had been injured through an accident while in the course of his employment, we believe the Board capriciously disregarded the evidence of Jackson's medical experts that

the glass which became imbedded in his diabetically diseased toe caused the injury and the resultant amputation and disability.

As noted above, the Board found that Jackson "did not prove that his present condition ... is related causally *in any way* to the ... lodging of the piece of glass in his left toe." (Emphasis added.) The somewhat equivocal statements on causation found in the record, while not couched in definite terms, certainly show *some* causal relationship between the glass and the eventual amputation. At the very least, the record shows that *but for* the injury caused by the glass, the gangrene and eventual amputation would not have occurred at the time they did. Although it is quite possible that Jackson *might have eventually* lost his toe because of his diabetically induced susceptibility to gangrene, the sliver of glass and the infection it caused precipitated the amputation. Despite the weaknesses in their presentation, Jackson's doctors proved at least this much of a causal relationship, and the Board was, therefore, not justified in ignoring their testimony and finding that Jackson did not prove causation "in any way."

In summary then, we affirm the Board and the lower court in their determination that Jackson suffered an injury due to an accident during the course of his employment, and we reverse the Board and the court below in their determination that there was no causal relationship. As a result, we

ORDER

AND NOW, this 6th day of March, 1975, the Joseph Switken Company, and its workmen's compensation insurance carrier are directed to pay to Mompie Jackson compensation for total disability at the rate of $47.50 per week beginning June 22, 1965, and continuing for an indefinite period into the future until such time as the disability of the claimant ceases or changes in character

and extent, with legal interest of six percent (6%) on all deferred payments, all within the terms and limits of the Pennsylvania Workmen's Compensation Act; and, further, the Joseph Switken Company, and its workmen's compensation insurance carrier are directed to pay to Mompie Jackson the sum of $2,837.53, representing reimbursement for statutory medical and hospital expenses.